IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

AGRI-SUPPLY COMPANY, INC.,

    **Plaintiff,**

v.                                                         ACTION NO. 2:05cv628

AGRISUPPLY.COM,

    **Defendant.**

### ORDER AND OPINION

This matter is before the Court on Motion of Agri-Supply Company Inc., ("Plaintiff") for Default Judgment, dated May 2, 2006, and requesting that the Court enter judgment in default against Defendant Agrisupply.com ("Defendant") and award all available remedies, including forfeiture of the domain name to Plaintiff, court costs, and reasonable attorneys fees. For the reasons stated herein, Plaintiff's Motion is **GRANTED**.

### I. PROCEDURAL BACKGROUND AND FACTUAL HISTORY

On October 19, 2005, Plaintiff filed a Complaint against domain name "Agrisupply.com," alleging trademark infringement in violation of 15 U.S.C. § 1114 and Virginia common law, as well as violations of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125. Complaint at ¶¶ 21-35. Plaintiff's Complaint prays for the following relief: (1) that the Court order ownership of the "Agrisupply.com" domain name be transferred to Plaintiff and, (2) that the costs and fees be taxed against Defendant.

With its Complaint, Plaintiff contemporaneously filed a Motion Regarding Service of Process Pursuant to 15 U.S.C. § 1125(d)(2), seeking to proceed in rem against the Defendant

domain name. Doc. 2. In response to the Motion Regarding Service of Process, the Court entered an Order, dated On November 14, 2005, finding that without having posted notice in a trademark infringement action pursuant to § 1125(d)(2)(B), Plaintiff had not served or established in rem jurisdiction over the putative Defendant domain name. Accordingly, the Court directed Plaintiff to publish notice of this action in order to establish grounds for proceeding in rem and to perfect service of process. Doc. 4.

On March 29, 2006, Plaintiff filed a Renewed Motion Regarding Service of Process, informing the Court that it had posted notice of this action in the "Caymanian Compass," and gave any interested party until February 12, 2006, to make an appearance here or otherwise respond. Doc. 5. On April 7, 2006, the Court granted the Renewed Motion Regarding Service of Process, finding that by publishing notice of the instant action, Plaintiff has established grounds for proceeding in rem and has perfected service of process. Doc. 6.

Defendant has made no response in this action, and default was entered by the clerk on May 2, 2006, upon Plaintiff's Motion for Entry of Default. Doc. 3. Also on May 2, 2006, Plaintiff contemporaneously filed a Motion for Default Judgment, along with a Memorandum in Support of the Motion and a Proposed Order. Doc. 8.

## II. STANDARD OF REVIEW

When it is made clear by affidavit or otherwise that "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. . . ," default shall be entered against them by the clerk. FED. R. CIV. PROC. 55(a). By defaulting, the defendant "admits the plaintiff's well pleaded allegations of fact. . . ." Borich, 2004 U.S. Dist. LEXIS at *5 (citing Ryan v. Homecomings Financial Network, 253 F.3d 778 (4th Cir. 2001)). Default

judgment is governed by Rule 55(b), which provides that "[w]hen the plaintiff's claim against a defendant is for a sum certain . . . , the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or an incompetent person." Rule 55(b)(1). In circumstances where there the sum is not certain or where there is evidence to suggest that the defendant was incompetent or an infant, Rule 55(b)(2) applies, requiring that default can only be make by a court. In this case, the relief requested is not for a certain sum; therefore, the Motion for Default Judgment has been referred to the Court.

III. DISCUSSION

*1. Default Judgment*

In its Complaint, Plaintiff has alleged the prima facie elements for cybersquatting under the ACPA, which provides that:

> (1) (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that--
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; . . . .

§ 1125(d)(1)(A).

In this case, Plaintiff is the trademark owner of the Agri-Supply brand, including the domain name "Agri-Supply.com." Complaint at ¶¶ 5-7. Modern Limited-Cayman Web Development is the registered owner of the Defendant domain name "Agrisupply.com." Id. at ¶ 2; Exhibit A to Plaintiff's Memorandum in Support of Motion Regarding Service of Process.

Defendant—the "Agrisupply.com" domain name—is virtually identical to Plaintiff's trademark. Thus, Plaintiff's allegation in the Complaint that the domain name is "confusingly similar" is well-founded. See id. at ¶ 13.

    Regarding the bad faith element, the ACPA provides as follows, in relevant part:

> (B) (i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--
> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> . . .
>
> (ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

§ 1125(d)(1)(B)(i) and (ii). In its Complaint, Plaintiff alleges that (1) the Cayman Web Development "has no rights or legitimate interest with respect to the Agrisupply.com domain name;" (2) that "Cayman Web Development uses the AGRI SUPPLY mark to promote [Plaintiff's] competitors;" (3) that the "Agrisupply.com domain name uses Plaintiff's legal name;" (4) that "Cayman Web Development does not and has not done business under the AGRI SUPPLY mark;" (5) that "Cayman Web Development is not making a legitimate noncommerical or fair use of the Agrisupply.com domain name;" and (6) that "Cayman Web Development is notorious for this type of behavior." Complaint at ¶¶ 14-19. Taken as admitted, these allegations of fact would support a finding of bad faith pursuant to the factors set forth in § 1125(d)(1)(B)(i).

Plaintiff has also attached several arbitration decisions filed against Cayman Web Development to support its allegation that Cayman Web Development has a documented history of cybersquatting.  See, e.g., Downey Communications, Inc. V. Modern Limited-Cayman Web Development, Claim No.: FA0404000260657 (Cayman Web Development "has been the subject of numerous ICANN complaints pertaining to the questionable registration of more than 2,200 domain names that look similar to well-known trademarks and names.").  The decisions uniformly found that Cayman Web Development registered confusingly similar domain names in bad faith and with no noncommerical or fair purpose for doing so.  See, e.g., SPTC, Inc. v. Modern Limited-Cayman Web Development, Claim No. FA057000508936 (Nat'l Arb. Forum August 19, 2005).  According to the arbitration decisions, Cayman Web Development profited from operating these domain names by receiving funds for advertising competitors on the website.  Id.

Here, Plaintiff also provided the print-out of the Agrisupply.com website, which shows that Defendant advertised Plaintiff's competitors by providing links to Plaintiff's competitors for goods and services.  See Plaintiff's Memorandum in Support of the Motion for Default Judgment [hereinafter "Pl.'s Mem."], Ex. B.  Thus, Plaintiff provides support for its allegation in the Complaint that Defendant has a bad faith intent to profit from the mark.

In its Complaint, Plaintiff has also alleged the prima facie elements of trademark infringement, whereby a Defendant "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).  The allegations of these elements are also supported, by reference to Exhibit B and the facts alleged

in establishing the cybersquatting claim.  Pl.'s Mem., Ex. B.

Because the allegations against Defendant are deemed admitted against Defendant by entry of default, and because Plaintiff has provided support for the well-pleaded elements of cybersquatting and trademark infringement under § 1114(1) and § 1125(d)(1), default judgment in favor of Plaintiff is **GRANTED**.

*2. Remedy*

As remedy for Defendant's violation, Plaintiff seeks forfeiture of the Agrisupply.com domain name, as well as court costs and reasonable attorneys fees.  While forfeiture and court costs are expressly provided for in the ACPA and the umbrella trademark remedial provisions of the Lanham Act, the award of reasonable attorneys fees requires additional analysis to determine whether the present one is an "exceptional case" under the statute.  Because each remedy requested requires analysis under separate provisions of these statutes, they will each be addressed in turn.

**A. Forfeiture of Domain Name**

Where a plaintiff is proceeding in rem pursuant to provisions of the ACPA, its remedies are limited to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  § 1125(d)(2)(D)(i).  In Plaintiff's Memorandum, Plaintiff states that on November 3, 2005, Plaintiff's counsel notified the domain name registrar for Defendant, VeriSign, Inc. ("VeriSign") of this action, and requested "that VeriSign '(I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and (II) not transfer, suspend, or otherwise modify the domain name during the pendency of the

action, except upon order of the court.'" Pl.'s Mem. at 1 (quoting § 1125(d)(2)(D)(i)(I) and (II)).

By letter, dated November 15, 2005, VeriSign informed Plaintiff that it could only take the action requested if directed to do so by court order. But if directed by court order, VeriSign could either delete the domain name from its registry or transfer the domain name to another willing registrar. Therefore, Plaintiff requests that the Court direct VeriSign, Inc. to transfer the domain name Agrisupply.com from eNOM, Inc. to Network Solutions, L.L.C., for the express benefit of Plaintiff. Pl.'s Mem. at 5; see also id. at Ex. B.

Pursuant to the remedial provisions of the ACPA, Plaintiff's Motion requesting forfeiture of the Agrisupply.com domain name is thus **GRANTED**. VeriSign, as the registry operator, shall change the registrar of record for the domain name "Agrisupply.com" from the current registrar, eNom, Inc., to a registrar selected by Plaintiff, including Network Solutions, LLC, which subsequently may register the domain name "Agrisupply.com" in the name of Agri-Supply Company, Inc.

### B. Attorneys Fees and Court Costs

Plaintiff also requests that the Court award court costs and attorneys fees to Plaintiff based upon Defendant "ignoring the requests to settle, ignoring the lawsuit, and ignoring the federal trademark registrations," and in light of Cayman Web Development's documented history of cybersquatting. Pl.'s Mem. at 5.

#### i. Remedies Available Under the Lanham Act

The two relevant statutes and applicable caselaw reveal that Plaintiff's request for attorneys fees and costs is proper under the Lanham Act (15 U.S.C. § 1117(a)), even where in

rem jurisdiction is wholly founded on the ACPA, 15 U.S.C. § 1125(d). Section 1117 of the Lanham Act governs remedies for violations of its trademark provisions. Subsection (a) of § 1117 substantively provides that:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114[1] of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff,[2] and (3) the costs of the action . . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). This subsection expressly encompasses actions under the ACPA, § 1125(d), in providing relief, and makes no distinction between those cases brought in personam and those falling within the ACPA's allowance for in rem jurisdiction where in personam jurisdiction cannot be established. Further, while § 1125(d)(2)(D)(i) of the ACPA states that "[t]he remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark," the statute continues that "the in rem action established under paragraph (2), and any remedy available under [that] section, shall be in addition to any other civil action or remedy otherwise applicable." 15 U.S.C. § 1125(d)(2)(D)(i) and (3) (emphasis added). By including § 1125(d) within its provisions for remedies available for trademark violations within the ambit of

---

[1] Sections 1111 and 1114 are inapplicable to the present case. Section 1111 provides a limitation on damages where notice that a trademark is registered is not given by the registrant. 15 U.S.C. § 1111. Section 1114's remedial provisions further limit liability and remedies for domain registries and where the trademark infringement concerns printed materials. 15 U.S.C. § 1114(2).

[2] Plaintiff has not requested an award of profits or damages in this case.

the Lanham Act, § 1117(a) provides the additional civil remedies provided for in ACPA § 1125(d)(3). Accordingly, a plaintiff that receives a default judgment in a case where in rem jurisdiction is granted only under the ACPA may also recover the civil remedies provided for under § 1117(a) of the Lanham Act, including actual damages, costs, and the possibility of attorneys fees.

### ii. Costs and Attorneys Fees are Proper in the Present Case

#### *a. Court Costs*

The Lanham Act's section on remedies expressly provides the award of court costs in ACPA cases. 15 U.S.C. § 1125(d)(3) (allowing additional civil remedies); 15 U.S.C. § 1117(a) (providing the additional civil remedies available in trademark cases under the Lanham Act and ACPA). Plaintiff pursued this case in rem under the ACPA, pursuant to the Order of this Court dated April 6, 2006. Therefore, Plaintiff's request for an award of court costs is **GRANTED**.

#### *b. Attorneys Fees*

Only where an "exceptional case" exists may attorneys fees be awarded by the Court. 15 U.S.C. § 1117(a) ("[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party"). Determination of whether this standard has been satisfied is in the sole discretion of the Court. Standard Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 n.6 (4th Cir. 1991) ("[t]he court has broad discretion to award any monetary relief necessary to serve the interests of justice."). While the statute does not define "exceptional case," the Fourth Circuit has interpreted the phrase to include those cases where "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." Retail Services, Inc. v. Freebies

Publishing, 364 F.3d 535, 550 (4th Cir. 2004), quoting People for the Ethical Treatment of Animals ("PETA") v. Doughney, 263 F.3d 359, 370 (4th Cir.2001) (internal quotation marks omitted).  While the statute does not limit the class of conduct that may qualify for "exceptional cases," courts have found that an award of attorneys fees may be supported not only by willful infringement,[3] but by "willful defiance and protraction of the judicial processes attempting to stop the illegalities." 15 U.S.C. § 1117(e) ("Nothing in this subsection limits what may be considered a willful violation under this section.");  Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999).  See also Vanwyk Textile Systems, B.V. v. Zimmer Machinery America, Inc., 994 F.Supp. 350, 382 (W.D.N.C. 1997).  In showing that an exceptional case exists, the prevailing party bears the burden of showing defendant's malicious, fraudulent, willful or deliberate conduct by clear and convincing evidence.  Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526 (5th Cir. 1998); CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 65 (5th Cir.1992); Machinery Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 472-73 (Fed.Cir.1985).  The Court, however, ultimately retains discretion to determine whether an award of attorneys fees is appropriate.  Id.

     Plaintiff has requested that the Court award attorneys fees because (1) Defendant has been unresponsive and disruptive of the litigation process by failing to appear in Court, (2) Defendant has been found to have acted in bad faith in other recent cases where the same cybersquatting practice was at issue, and (3) Defendant has acted in bad faith because it has no

---

[3] The courts have defined "willful" for purposes of this § 1117(a)'s attorney fee provision as "having knowledge that one's conduct constitutes infringement or showing reckless disregard for the owner's rights."  Microsoft Corporation v. Grey Computer, 910 F.Supp. 1077, 1091 (D.Md.1995).

rights or legitimate interest in the "Agrisupply.com" domain name. Pl.'s Mem. at 3-5.

First, Plaintiff alleges that it is entitled to attorneys fees because of Defendant's conduct in "ignoring the request to settle, ignoring the lawsuit, and ignoring the federal trademark regulations." Pl.'s Mem. at 5. Willful defiance of the judicial process lends sufficient grounds for finding that an exceptional case under § 1117(a) exists. Sara Lee Corp., 36 F. Supp. 2d at 170; Vanwyk Textile Systems, 994 F.Supp. at 382. Indeed, Defendant has made no appearance in this case, even after service of process was satisfactorily achieved.

Plaintiff, second, alleges that the Defendant's long documented history of cybersquatting gives rise to a finding that it acted in bad faith in the present case. Pl.'s Mem. at 5. Plaintiff alleges that Defendant "has been the subject of numerous ICANN [Internet Corporation for Assigned Names and Numbers] complaints pertaining to the questionable registration of more than 2,200 domain names that look similar to well-known trademarks and names." Id. quoting Downey Communications, Inc., v. Modern Limited-Cayman Web Development, Claim No.: FA04000260657 (Nat'l Arb. Forum June 28, 2004). This extensive list of complaints includes several findings by arbitral tribunals that Defendant acted in bad faith. Id., citing SPTC, Inc. v. Modern Limited-Cayman Web Development, Claim No.: FA057000508936 (Nat'l Arb. Forum Aug. 19, 2004); Downey Communications, Claim No.: FA04000260657; InfoSpace, Inc. v. Modern Limited-Cayman Web Development, Claim No.:FA0312000215371 (Nat'l Arb. Forum Jan. 19, 2004); Microsoft Corp. v. Modern Limited-Cayman Web Development, Claim No.: D2003-0919 (WIPO Jan. 13, 2004). The trademark infringements addressed in these recent cases are identical in form and practice to those actions alleged by Plaintiff in the present case. Accordingly, the systematic practice of Defendant in past cases further supports a finding of bad

faith and deliberate, willful infringement on the part of Defendant in the present case.

Finally, the Plaintiff's Motion for default judgment has shown a prima facie case for violation of ACPA, including a showing that Defendant "has a bad faith intent to profit from" use of the infringing domain name. Pl.'s Mem. at 5, quoting 15 U.S.C. § 1125(d)(1)(A). Thus, while showing bad faith is required by the statute to find a violation of the claim, once shown this fact may also be used to show the existence of an exceptional case in support of an award of attorneys fees.

Section 1117(a), the remedial provision of the Lanham Act, provides for attorneys fees in those "exceptional cases" where the "defendant's conduct was malicious, fraudulent, willful or deliberate in nature." 15 U.S.C. § 1117(a); Retail Services, Inc., 364 F.3d at 550, quoting PETA, 263 F.3d at 370 (internal quotation marks omitted). Plaintiff has given three grounds showing that Defendant here has not only failed to participate in this suit, but that it has intentionally acted in bad faith both in this case and in numerous recent cases for similar trademark infringement practices.

Because Defendant's conduct is willful, deliberate, and in bad faith, this case falls within § 1117(a)'s meaning of an "exceptional case," and Plaintiff's request for an award of all reasonable attorneys fees associated with this case is **GRANTED**.

IV. CONCLUSION

Defendant has been found, in default, to have violated § 1125(d) of the ACPA. Plaintiff is therefore entitled to all remedies provided for in that section as well as those provided for elsewhere in the Lanham Act, § 1117(a). These remedies include transfer of control of the

domain name to Plaintiff, as well as the award of court costs, expressly granted by statute. Plaintiff is also entitled to the award of attorneys fees because it has shown the existence of an "exceptional case" under § 1117(a) and the circumstances vividly illustrate that the Defendant acted willfully, deliberately, and in bad faith.  Accordingly, Plaintiff's Motion is **GRANTED**.

For the reasons stated herein, it is hereby **ORDERED** that:

1. Defendant has failed to appear in this action and the Court enters Defendant's default.

2. Defendant has failed to answer Plaintiff's Complaint, thus each averment is deemed admitted.

3. Defendant has violated the Anticybersquatting Consumer Protection Act ("ACPA"), codified at 15 U.S.C. § 1125(d).

4. Defendant has infringed Plaintiff's trademark rights by violation of 15 U.S.C. § 1114.

5. VeriSign Inc., as the registry operator, shall change the registrar of record for the domain name "Agrisupply.com" from the current registrar, eNom, Inc., to a registrar selected by Plaintiff, including Network Solutions, LLC, which subsequently may register the domain name "Agrisupply.com" in the name of Agri-Supply Company, Inc.

6. Defendant shall pay Plaintiff's court costs for this action, pursuant to 15 U.S.C. §§ 1125(d)(3) and 1117(a).

7. Defendant acted willfully, deliberately, and in bad faith in its use of the

Agrisupply.com domain name.  This is thus an "exceptional case" under 15 U.S.C. § 1117(a).  Accordingly, Defendant shall compensate Plaintiff for all reasonable attorneys fees associated with this action.  Plaintiff has twenty (20) days from the date of the Order within which to submit to the Court Plaintiff's statements of its fees from which the Court will enter an award of fees.

                                                        /s/
                                      HENRY COKE MORGAN, JR.
                         UNITED STATES SENIOR DISTRICT JUDGE

Norfolk, Virginia
September 11, 2006